## CARMAN & CO., Inc., et al. v. PHŒNIX PRODUCTS CO.

District Court, E. D. Wisconsin.
Jan. 14, 1932.

Lines, Spooner & Quarles, of Milwaukee, Wis., for plaintiffs.

Casnave Young, of Milwaukee, Wis., for defendant.

GEIGER, District Judge.

The plaintiffs charge defendant with infringement of letters patent 1,777,814, issued October 7, 1930, to Charles S. Vita, covering a "shirt collar support."

The subject-matter of the patent is well exhibited in a sample:

The patentee, after referring to the popularity of "men's shirts with collars permanently attached," states the desirability of supporting or stiffening the collar in the course of laundering, so that when the shirts are ironed and piled on top of each other, the collars may not be crushed out of shape. He seeks to achieve the object of providing "a suitable brace or support for the collar and especially for the front thereof," claiming as additional advantages the ease of attachment by laundry workers, etc. Of his claims, three in number, the first may be referred to: "1. A shirt collar support for preserving the laundered condition of the collar portion of a collar-attached shirt prior to wear thereof, comprising a blank having oppositely disposed arms adapted to fit between the flap and the neckband of a turndown collar in folded, laundered condition, the said blank being generally V-shaped at its top to engage the V-shaped fold formed at the junction of the flap and the neckband, *and means formed in said blank for engaging a button of said shirt to brace or hold the blank in shirt collar supporting position.*"

For present purposes it will suffice to note the variant statement of claims 2 and 3 respecting the element (in italics) above noted.

In claim 2: "Means for *detachably connecting* said blank to said shirt adjacent the collar thereof to brace the blank upwardly toward said fold and hold the blank in shirt-collar supporting position."

In claim 3: "Means *formed in said blank* for *positively* engaging a part of said shirt to brace or hold the blank in shirt-collar supporting position."

In the figures forming a part of the specifications, the patentee speaking directly to the element which in the claims is referred to as a means for "engaging," "detachably connecting," or a *"means formed in said blank,* for *positively engaging* a part of said

shirt to brace," he says: "A slot, 13, is formed at the midpoint of the junction of the diverging arms, 11 and 12, at the lower (looking at Figure 3) or obtuse side of the collar support. Slot 13 is adapted to fit under collar button 5, and to serve to brace or hold the collar support in a position relative to the collar whereby it is effective to engage the underside of the fold formed at the junction of the top of the flap and neckband and serve to support the collar and maintain it in an unwrinkled position until the wearer desires to use it."

The patents cited by the defendant are all in the art (if it may be so termed) of collar protecting or supporting devices. It was suggested on oral argument that the circumstance respecting the use of some of the devices for supporting or protecting collars when being worn did not at all withdraw their significance in either the identical or an exceedingly analogous art. In other words, the circumstance that the launderer desires to avail himself of a collar protector did not create a new art. In this view it may be said generally that the art discloses a considerable resort to what might be termed "selective variants": Graubarth 1,083,826, Ahrens 1,337,-989, Cousino (Figure 4) 1,705,719, may all be credited with endeavoring to select U-shaped styles, whereas Maye No. 1,487,396, apparently selected an M-shaped or an inverted W, for a "collar and tie support"; whereas Willard 1,724,334 and Wordingham 1,596,958 resorted (the first structurally and the second in his use or application) to the angular characteristic of the letter V. The present case discloses that the defendant apparently discovered the letter X as a good pattern. The following is a sample:

These patents, when considered in connection with the defendant's supporter, and particularly upon the proofs, which disclose embodiments of a considerable number of variants, present rather forcefully the question of inventive novelty. It is quite true that, looking at mere structural formation,

there is a marked difference in appearance between Graubarth and Vita, or Cousino. But in estimating, not mere possibilities, but the probabilities of recognition by skilled workers in the art of Graubarth's basic notion, the patents themselves answer the question. That is to say, it will not do to deny that apparently all the workers readily perceived the range within which changes of form, consistent with a retention of the basic idea, could be made. And Willard is peculiarly significant in his disclosure, not merely of a collar protector, but "a combination *shirt band* and soft shirt collar protector." He apparently introduced into such combination all of the collar protector elements of the art, with this variation: He added to Cousino the V-shape and left out Graubarth's button-engaging slot —doubtless on the assumption that the folding band (the other part of his combination) would suffice. It is of interest that, respecting the collar protecting feature of his combination, he refers to the former art as exhibiting "some kind of stiffening strip or member under or inside the ironed collar." He apparently assumes a wide selective range either upon or outside of the art, and claims novelty merely in his combination, a "single device by means of which both of the above mentioned results can be attained."

It may be conceded that, in addition to structural differences, these protecting and supporting devices have their respective advantages or disadvantages, or that some may be deemed merely preferable upon other considerations, such as cost or convenience. But upon the basic question, the patents themselves suggest that in some instances novelty was ascribed to what after all appears as a mere structural variant. Upon this question of novelty, as well as that of infringement, the plaintiff's difficulty seemed well illustrated when, in response to a question, it was asserted that if in Willard the shirt band were entirely eliminated, or in Vita, the apex of the V should be cut off by a transverse line eliminating the "slot," each would still be within the spirit and language of the Vita patent, even though neither had any collar button *engaging* means, except such as might be afforded by the straight edge resting upon the button. Plainly, in this view, Cousino, if properly proportioned, in relation to the distance from the collar junction to the button, would anticipate Vita *unless* the latter's novelty be found in adopting a V instead of a curved shape. And if this latter be so, it would seem to me that the defendant, in adopting the X-shape, would exhibit like novelty.

It is my judgment that the patent is void for want of novelty.

But, upon the issue of infringement, Vita rather clearly drew upon the art for his definition of one of the elements. Graubarth called it, "Slot or recess"; Ahrens, "A collar button enclosing loop"; Maye, "button engaging fork * * * adapted to set over the collar button," and in his claims, "means for engaging the collar button." Vita defines his element as a "slot"; and witness and counsel, upon the hearing in this case, expressly conceded that all of the claims should be interpreted as comprehending substantially the disclosure shown in the drawings—that is to say, a true slot, or as the witness admitted, practically a bottonhole open at one side.

In this situation, it does not seem possible that the plaintiff can be entitled to comprehend within his definition the defendant's structure which, upon fair interpretation, either upon or outside of the art, contains neither a "slot" nor a "recess" as a means *"formed in the blank."* As indicated upon oral discussion, the plaintiff cannot insist that although his claims called for several elements, if the device as a whole, without specific inclusion of one of the elements, discharges the function of the omitted element, the claim may stand.

Upon these views the defendant may take a decree.