## CARMAN & CO., Inc., et al. v. PHŒNIX PRODUCTS CO.

### No. 4801.

Circuit Court of Appeals, Seventh Circuit.

Feb. 24, 1933.

Maxwell James, of New York City (Louis Quarles, of Milwaukee, Wis., of counsel), for appellants.

Casanave Young, of Milwaukee, Wis., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

This is a patent infringement suit. It involves claims 1, 2, and 3 of patent No. 1,777,-814. The patent covers a shirt collar support and was issued October 7, 1930, to Charles S. Vita. It is owned by appellant Carolyn Laundry, and appellant Carman & Co., Inc. is the exclusive licensee. The defenses are invalidity and noninfringement, and the trial court found that the patent was neither valid nor infringed, and dismissed the bill for want of equity.

Claim 1 is as follows:

"A shirt collar support for preserving the laundered condition of the collar portion of a collar-attached shirt prior to wear thereof, comprising a blank having oppositely disposed arms adapted to fit between the flap and the neckband of a turn-down collar in folded laundered condition, the said blank being generally V-shaped at its top to engage the V-shaped fold formed at the junction of the flap and neckband, *and means formed in said blank for engaging a button of said shirt to brace or hold the blank in shirt collar supporting position.*" (Our italics.)

Claims 2 and 3 differ materially from claim 1 with respect only to the element above noted (in italics) and in those respects they are as follows:

2. "* * *, and means for detachably connecting said blank to said shirt adjacent the collar thereof to brace the blank upwardly toward said fold and hold the blank in shirt collar supporting position."

3. "* * *, and means formed in said blank for positively engaging a part of said shirt to brace or hold the blank in shirt collar supporting position."

With reference to that element the specifications contain the following:

"A slot 13 is formed at the mid-point of the junction of the diverging arms 11 and 12, at the lower or obtuse side of the collar support. Slot 13 is adapted to fit under collar button 5 and to serve to brace or hold the collar support in a position relative to the collar whereby it is effective to engage the underside of the fold formed at the junction of the top of the flap and neckband and serve to support the collar and maintain it in an unwrinkled position until the wearer desires to use it."

The patented article referred to as Figure 1, and appellee's alleged infringing device referred to as Figure 2, are herewith reproduced:

**Figure 1**

**Figure 2**

Many patents much older in the art than appellants' were submitted which exhibit everything claimed by appellants, and some

of them show a combination of collar protector and means of holding it in place by contact with the collar or shirt button as does appellants' patent. It is true that some of those older patents were designed for collar protectors and supports when the collar was being worn, but, as the trial court well said, the circumstance that the launderer desired to avail himself of a collar protector did not create a new art.

The views of the District Court are quite aptly and cogently stated in its written opinion (2 F. Supp. 630), and we quote: " * * * The art discloses a considerable resort to what might be termed 'selective variants': Graubarth 1,083,826, Ahrens 1,-337,989, Cousino * * * 1,705,719, may all be credited with endeavoring to select U-shaped styles, whereas Maye No. 1,487,396, apparently selected an M-shaped or an inverted W, for a 'collar and tie support'; whereas Willard 1,724,334 and Wordingham 1,596,958 resorted (the first structurally and the second in his use or application) to the angular characteristic of the letter V. The present case discloses that the defendant apparently discovered the letter X as a good pattern."

Continuing the court said: "It is quite true that, looking at mere structural formation, there is a marked difference * * * between Graubarth and Vita, or Cousino. But in estimating, not mere possibilities, but the probabilities of recognition by skilled workers in the art of Graubarth's basic notion, * * * it will not do to deny that apparently all the workers readily perceived the range within which changes of form, consistent with a retention of the basic idea, could be made. And Willard is peculiarly significant in his disclosure, not merely of a collar protector, but 'a combination shirt band and soft shirt collar protector.' He apparently introduced into such combination all of the collar protector elements of the art, with this variation: He added to Cousino the V-shape and left out Graubarth's button-engaging slot—doubtless on the assumption that the folding band (the other part of his combination) would suffice. It is of interest that, respecting the collar protecting feature of his combination, he refers to the former art as exhibiting 'some kind of stiffening strip or member under or inside the ironed collar.' He apparently assumes a wide selective range either upon or outside of the art, and claims novelty merely in his combination, a 'single device by means of which both of the above mentioned results can be attained.'

"It may be conceded that, in addition to structural differences, these protecting and supporting devices have their respective advantages or disadvantages, or that some may be deemed merely preferable upon other considerations, such as cost or convenience. But upon the basic question, the patents themselves suggest that in some instances novelty was ascribed to what after all appears as a mere structural variant. Upon this question of novelty, as well as that of infringement, the plaintiff's difficulty seemed well illustrated when, in response to a question, it was asserted that if in Willard the shirtband were entirely eliminated, or in Vita, the apex of the V should be cut off by a transverse line eliminating the 'slot,' each would still be within the spirit and language of the Vita patent, even though neither had any collar button engaging means, except such as might be afforded by the straight edge resting upon the button. Plainly, in this view, Cousino, if properly proportioned, in relation to the distance from the collar junction to the button, would anticipate Vita unless the latter's novelty be found in adopting a V instead of a curved shape. And if this latter be so, it would seem to me that the defendant, in adopting the X-shape, would exhibit like novelty."

On the subject of infringement the trial court said:

"Vita rather clearly drew upon the art for his definition of one of the elements. Graubarth called it, 'Slot or recess'; Ahrens, 'A collar button enclosing loop'; Maye, 'Button engaging fork * * * adapted to set over the collar button,' and in his claims, 'means for engaging the collar button.' Vita defines his element as a 'slot'; and witness and counsel * * * expressly conceded that all of the claims should be interpreted as comprehending substantially the disclosure shown in the drawings—that is to say, a true slot, or as the witness admitted, practically a buttonhole open at one side.

"In this situation it does not seem possible that the plaintiff can be entitled to comprehend within his [Vita's] definition the defendant's structure which * * * contains neither a 'slot' nor a 'recess' as a means 'formed in the blank.' * * * Plaintiff cannot insist that although his claims called for several elements, if the device as a whole, without specific inclusion of one of the elements, discharges the function of the omitted element, the claim may stand."

We are convinced that the conclusions of the District Court are correct.

Decree affirmed.